FILED
2015 MAR 12, AM 10' 49
CLERK AND MASTER
DAVIDSON CO. CHANCERY CT.

# IN THE CHANCERY COURT OF DAVIDSON COUNTY, TENNESSEE
## AT NASHVILLE

WESLEY L. COKER,

     Plaintiff,

v.

THE NORTHWESTERN MUTUAL
LIFE INSURANCE COMPANY,

     Defendant.

DC&M

No. 15-305-I

**JURY DEMANDED**

---

## COMPLAINT

---

COMES NOW the Plaintiff, Wesley L. Coker, by and through counsel, and for his claims against the Defendant, The Northwestern Mutual Life Insurance Company, would respectfully state and show to the Court as follows:

### I.     PARTIES AND JURISDICTION

1. Plaintiff, Wesley L. Coker (hereafter "Dr. Coker"), is an adult citizen and resident of Davidson County, Tennessee. His date of birth is May 27, 1943.

2. Defendant, The Northwestern Mutual Life Insurance Company (hereafter "Northwestern"), is a Wisconsin corporation authorized to issue disability insurance policies within the State of Tennessee. At all times relevant hereto, Northwestern conducted and transacted insurance business with Dr. Coker in Davidson County, Tennessee, and continues to conduct and transact insurance business in Davidson County, Tennessee.

3. Joe Thompson (hereafter "Thompson") is a former agent, servant, and representative of Northwestern, and served as an authorized agent of Northwestern from 1944 until he retired in

1

EXHIBIT
A
tabbies

2009 at the age of 90. Thompson died on March 24, 2012. At all times relevant hereto, Thompson was acting within the course and scope of his employment or agency relationship with Northwestern and with actual and/or apparent authority in the scope and course of that agency for and on behalf of Northwestern. At all times material hereto, Northwestern is responsible for, bound by, and liable for the acts, omissions, conduct, recommendations, representations, statements, and promises of Thompson in his dealings with Dr. Coker concerning the multiple Northwestern disability policies at issue in this case.

4. Jurisdiction and venue are proper in this Court.

## CASE SUMMARY

5. This case arises from Northwestern's unlawful refusal to pay lifetime disability benefits to Dr. Coker on multiple disability insurance policies purchased by Dr. Coker from Northwestern's representative of 64 years, Joe Thompson. Based on the suggestion and recommendation of Thompson, Dr. Coker purchased multiple disability insurance policies with "lifetime benefits" from Northwestern, which were represented by Thompson to be without restriction, limitation, condition, or contingency. In general, the agreement was that for as long as Dr. Coker continued to practice medicine in his specialized area (orthopedic surgery), then he would be entitled to monthly lifetime benefits in the event he became disabled. Dr. Coker purchased these policies from 1977 to 1992 in reliance on Thompson's statements to him regarding the "lifetime" nature of the benefits. Dr. Coker was never provided a copy of the policies, but was provided certain work papers by Thompson in 1987, which revealed that he had indeed purchased policies with "lifetime benefits."

Dr. Coker became disabled in 2012, and Northwestern ultimately acknowledged his disability and began paying benefits. Unfortunately, Northwestern denies that the policies had

2

a "lifetime benefit," instead alleging that its obligations to pay benefits ceased after 24 months. Dr. Coker contests that decision, and alleges that Northwestern owes him monthly disability benefits for life as agreed. Moreover, at the time of its refusal to pay Dr. Coker, Northwestern knew that Thompson had represented to multiple physicians that their disability policies had lifetime benefits without limitation, restriction, condition or contingency. Dr. Coker seeks his actual damages and punitive damages.

## II. FACTS

6. For many years, Joe Thompson acted as Dr. Coker's insurance producer for all of Dr. Coker's life and disability insurance needs. At all times material hereto, Joe Thompson was a licensed insurance producer under the laws of the State of Tennessee, and sold, solicited, and negotiated insurance in the ordinary course of his business as an agent for Northwestern.

7. Thompson was an insurance professional who had specialized and superior training, information, and knowledge concerning insurance matters as compared to Dr. Coker. Thompson professed to the public, including Dr. Coker, a specialty in procuring appropriate and adequate disability and life insurance coverage for high net worth individuals, particularly physicians with complex risks and needs, and Thompson held himself out as an insurance professional who was willing and able to procure such insurance coverage for Dr. Coker. Accordingly, Dr. Coker hired Thompson, in part, to eliminate the risk of absent or inadequate life and disability insurance coverage.

8. Thompson first solicited Dr. Coker to purchase life and disability insurance from Northwestern in 1974 while Dr. Coker was a resident in Orthopedic Surgery at Vanderbilt University Hospital. Thompson described himself as a certified underwriter, stating that he had special training and expertise in life and disability insurance products. Thompson emphasized

3

to Dr. Coker that Northwestern policies were "exceptional" and "remarkable," especially for physicians and that he could not imagine any other insurance company being able to compete with Northwestern because of its "exceptional" benefits for physicians.

9. Northwestern, through Thompson, undertook to assume responsibility for the life and disability insurance related affairs of Dr. Coker. Dr. Coker relied heavily upon the expertise of Northwestern/Thompson because of the specialized knowledge that is required to appreciate and understand all the intricacies associated with life and disability insurance.

10. As part of the services provided to Dr. Coker, Thompson procured and obtained multiple disability insurance policies from Northwestern for the benefit of Dr. Coker. Based on the statements of Dr. Coker, Northwestern, via Thompson, knew that Dr. Coker desired lifetime disability benefits without limitation, restriction, or contingency. Based on Thompson's express recommendations and promises, Dr. Coker purchased from Northwestern such lifetime disability benefit protection without limitation, restriction or contingency through Thompson, Northwestern's agent, servant, and employee. Thompson agreed and promised to procure such coverage on Dr. Coker's behalf, and assured Dr. Coker that he was appropriately and fully insured with lifetime disability benefits as promised and requested.

11. At all times relevant hereto, Thompson had Northwestern Mutual's authority to solicit insurance products and to make changes to insurance coverage.

12. Dr. Coker and Thompson/Northwestern Mutual were in a relationship as client/insurance service provider and/or client/insurance provider, pursuant to which Northwestern/Thompson agreed to provide Dr. Coker with professional services and adequate and appropriate insurance coverage. Dr. Coker, in turn, promised to pay for such services and insurance coverage and did in fact pay more than $250,000 in disability insurance premiums over the years.

4

13. Northwestern issued ten disability insurance policies (plus two disability overhead expense policies) to Dr. Coker on the following specified dates and provided the designated disability benefit protection to Dr. Coker:

| Policy Number | Date Issued | Monthly Benefit |
|---|---|---|
| (1)  D062563 | November 17, 1974 | $750 |
| (2)  D093522 | December 17, 1976 | $750 |
| (3)  D105556 | July 18, 1977 | $500 |
| (4)  D105803 | July 18, 1977 | $500 |
| (5)  D166511 | October 14, 1979 | $1,500 |
| (6)  D341328 | March 27, 1984 | $3,000 |
| (7)  D387664 | April 2, 1985 | $800 |
| (8)  D542186 | July 27, 1987 | $1,700 |
| (9)  D929203 | October 23, 1992 | $2,620 |
| (10)  D940870 | October 23, 1992 | $1,380 |

14. Thompson obtained each of the above disability policies from Northwestern for the benefit of Dr. Coker.

15. Pursuant to the policies, Dr. Coker was required to pay a premium to Northwestern in exchange for the insurance coverage. All required premiums were timely paid.

16. Pursuant to the above-referenced disability policies as represented by Thompson, Dr. Coker was entitled to receive lifetime monthly benefits if he were to suffer a disability that prevented him from performing his work as an orthopedic surgeon.

5

17. , Thompson stated and promised to Dr. Coker that the above-referenced disability policies would have lifetime benefits, which Dr. Coker purchased for an additional premium. The policies shall hereafter be referred to as the "Lifetime Policies."

18. During meetings with Dr. Coker in the 1970s, 1980s, and 1990s, Thompson consistently and repeatedly assured and represented to Dr. Coker that his Northwestern disability policies had "lifetime benefits," which Thompson explained to Dr. Coker as entitling him to monthly benefits for life if he were disabled while still actively engaged in his specialized area of medical practice (orthopedic surgery).   In making recommendations and representations to Dr. Coker regarding the Lifetime Policies, Thompson did not ever represent or advise Dr. Coker that the right to receive such lifetime disability benefits would be limited, restricted, conditioned, or contingent in any way, but to the contrary represented the very opposite.

19.    In a meeting with Thompson in January 1987, Thompson stated to Dr. Coker that the Northwestern policies afforded him "exceptional" benefits and that only Northwestern provided "lifetime benefits."   At that meeting, Thompson assured Dr. Coker that he had $7,800 in "lifetime benefits" and Thompson gave Dr. Coker a print-out of work papers showing same and clearly identifying the additional "lifetime benefit."

20. Prior to Dr. Coker's meeting with Thompson in 1987, Thompson had assisted Dr. Coker obtain a Mutual Benefit Group Policy with a benefit of $3,000 per month, but in the 1987 meeting, Thompson specifically stated to Dr. Coker that the benefit offered by the Mutual Benefit Group Policy would not be for Dr. Coker's lifetime but instead only to age 65.   That was one of Thompson's biggest selling points - - that Northwestern offered lifetime benefits without restriction, limitation, condition, or contingency.

6

21. In or around 1992, Thompson advised Dr. Coker that "everything at Northwestern had changed" and that moving forward, he could no longer offer policies to Dr. Coker with the same type of exceptional benefits that he had previously provided. Thompson stressed, however, that all of the Lifetime Policies previously purchased by Dr. Coker would be honored by Northwestern and that the lifetime benefits in those policies would remain intact. Thompson stressed how very fortunate Dr. Coker was to have purchased such lifetime disability protection in the past.

22. Dr. Coker suffered physical disabilities on or about April 1, 2012 when he suffered an accidental back injury that forever ended his ability to perform his work as an orthopedic surgeon. Dr. Coker was still working full time as an orthopedic surgeon at the time of his disability.

23. None of the ten policies listed above were delivered to Dr. Coker until after he became disabled.

24. After Dr. Coker filed a claim for disability benefits with Northwestern, Northwestern sent him two different versions of the Lifetime Policies - - one set being called a "substitute" and the other a "replica." The "substitute" and "replica" policies differed in material respects. The "substitute" was provided in 2012 and the "replica" was provided in 2014.

25. Northwestern has acknowledged to Dr. Coker, in writing, that it is Northwestern's "normal practice to have our insured's sign a receipt indicating that they received a copy of their policy upon issuance." However, Northwestern is unwilling or unable to produce any such receipt or any evidence whatsoever that Dr. Coker received any of his Northwestern disability policies prior to his disability.

7

26. A review of the "substitute" and "replica" policies produced by Northwestern after Dr. Coker's disability reveals the following:

    a.  Policy No. D062563 was issued to Dr. Coker on November 27, 1974 with a disability benefit of $750.00 per month. Thompson assured Dr. Coker that Policy No. D062563 afforded him lifetime benefits and never indicated that the lifetime benefits would be limited, restricted, or contingent in any way. The policy was never delivered to Dr. Coker until after his disability, and Dr. Coker had no opportunity to read, review, or analyze it until after his disability, when Northwestern provided him with two different versions (a "substitute" and a "replica"), which differed in material respects.

    b.  Policy No. D093522 was issued to Dr. Coker on December 17, 1976 with a disability benefit of $750.00 per month. Thompson assured Dr. Coker that the policy afforded him lifetime benefits and never indicated that the lifetime benefits would be limited, restricted, or contingent in any way. The policy was never delivered to Dr. Coker until after his disability, and Dr. Coker had no opportunity to read, review, or analyze it until after his disability, when Northwestern provided him with two different versions (a "substitute" and a "replica"), which differed in material respects.

    c.  Policy No. D105556 was issued to Dr. Coker on July 18, 1977 with a disability benefit for sickness or accident in the amount of $500.00 per month. This policy was originally issued with a maximum benefit period of "for life" for accidental disability, but was "to the first policy anniversary after 65" for disability caused by sickness. On June 18, 1984, Thompson presented to Dr. Coker an

8

Application for Policy Change, which purported to broaden the original coverage to afford lifetime benefits for disability caused by both sickness and accident. Thompson assured Dr. Coker that Policy No. D105556 afforded him lifetime benefits and never indicated that the lifetime benefits would be limited, restricted or contingent in any way. The policy was never delivered to Dr. Coker until after his disability, and Dr. Coker had no opportunity to read, review, or analyze it until after his disability, when Northwestern provided him with two different versions (a "substitute" and a "replica"), which differed in material respects.

d. Policy No. D105803 was issued to Dr. Coker on July 18, 1977 with a disability benefit for sickness or accident in the amount of $500.00 per month. This policy was originally issued with a maximum benefit period of "for life" for accidental disability, but was "to the first policy anniversary after 65" for disability caused by sickness. On June 18, 1984, Thompson presented to Dr. Coker an Application for Policy Change, which purported to broaden the original coverage to afford lifetime benefits for disability caused by both sickness and accident. Thompson assured Dr. Coker that Lifetime Policy No. D105803 afforded him lifetime benefits and never indicated that the lifetime benefits would be limited, restricted or contingent in any way. The policy was never delivered to Dr. Coker until after his disability, and Dr. Coker had no opportunity to read, review, or analyze it until after his disability, when Northwestern provided him with two different versions (a "substitute" and a "replica"), which differed in material respects.

9

e.  Policy No. D166511 was issued to Dr. Coker on October 14, 1979 with a disability benefit for sickness or accident in the amount of $1,500.00 per month. According to the application, this policy was originally to be issued with a maximum benefit period "to age 65" for disability caused by both sickness and accident.   On June 18, 1984, Thompson presented to Dr. Coker an Application for Policy Change, which purported to extend the original maximum benefit period to afford lifetime benefits for disability caused by both sickness and accident.   Thompson assured Dr. Coker that Lifetime Policy No. D166511 afforded him lifetime benefits and never indicated that the lifetime benefits would be limited, restricted or contingent in any way.     The policy was never delivered to Dr. Coker until after his disability, and Dr. Coker had no opportunity to read, review, or analyze it until after his disability, when Northwestern provided him with two different versions (a "substitute" and a "replica"), which differed in material respects.

f.  Policy No. D341328 was issued to Dr. Coker on March 27, 1984 with a disability benefit of $3,000 per month.   Thompson assured Dr. Coker that the policy afforded him lifetime benefits and never indicated that the lifetime benefits would be limited, restricted, or contingent in any way.   The policy was never delivered to Dr. Coker until after his disability, and Dr. Coker had no opportunity to read, review, or analyze it until after his disability, when Northwestern provided him with two different versions (a "substitute" and a "replica"), which differed in material respects.

10

g. Policy No. D387664 was issued to Dr. Coker on April 2, 1979 with lifetime benefits for total disability by sickness or accident in the amount of $800.00 per month. Thompson assured Dr. Coker that Lifetime Policy No. D387664 afforded him lifetime benefits and never indicated that the lifetime benefits would be limited, restricted or contingent in any way. The policy was never delivered to Dr. Coker until after his disability, and Dr. Coker had no opportunity to read, review, or analyze it until after his disability, when Northwestern provided him with two different versions (a "substitute" and a "replica"), which differed in material respects.

h. Policy No. D542186 was issued to Dr. Coker on July 2, 1987 with lifetime benefits for total disability by sickness or accident in the amount of $1,700.00 per month. Thompson assured Dr. Coker that Lifetime Policy No. D542186 afforded him lifetime benefits and never indicated that the lifetime benefits would be limited, restricted or contingent in any way. The policy was never delivered to Dr. Coker until after his disability, and Dr. Coker had no opportunity to read, review, or analyze it until after his disability, when Northwestern provided him with two different versions (a "substitute" and a "replica"), which differed in material respects. Notably, Dr. Coker requested a benefit amount of $2,200 per month, but for reasons unknown to Dr. Coker, the policy was only issued with a benefit of $1,700 per month.

i. Policy No. D929203 was issued to Dr. Coker on October 23, 1992 with lifetime benefits for total disability by sickness or accident in the amount of $2,620 per month. Thompson assured Dr. Coker that Lifetime Policy No. D929203

11

afforded him lifetime benefits and never indicated that the lifetime benefits would be limited, restricted or contingent in any way. The policy was never delivered to Dr. Coker until after his disability, and Dr. Coker had no opportunity to read, review, or analyze it until after his disability, when Northwestern provided him with two different versions (a "substitute" and a "replica"), which differed in material respects.

  j. Policy No. D940870 was issued to Dr. Coker on October 23, 1992 with a disability benefit of $1,380 per month. Thompson assured Dr. Coker that the policy afforded him lifetime benefits and never indicated that the lifetime benefits would be limited, restricted, or contingent in any way. The policy was never delivered to Dr. Coker until after his disability, and Dr. Coker had no opportunity to read, review, or analyze it until after his disability, when Northwestern provided him with two different versions (a "substitute" and a "replica"), which differed in material respects.

27. At all times material hereto, Thompson knew that Dr. Coker was relying on Thompson to fully, completely, and accurately advise him of the content and scope of his disability insurance policies, particularly so in light of the fact the policies were never delivered to Dr. Coker.

28. When Dr. Coker became disabled in the spring of 2012, he requested that Northwestern pay him monthly disability benefits pursuant to the Northwestern disability policies sold to him by Thompson.

29. After acknowledging that Dr. Coker was physically disabled and could no longer practice his specialty of orthopedic surgery, Northwestern began to pay Dr. Coker monthly disability benefits.

12

30. By letter dated May 13, 2013, Northwestern advised Dr. Coker that he was not entitled to lifetime benefits on the Lifetime Policies. Specifically, Northwestern stated:

> In order to qualify for the Lifetime Benefits, Dr. Coker would have needed to be considered totally disabled on the policy anniversary following age 60 (during 2003) and that total disability would have needed to continue beyond the first policy anniversary following his 65th birthday (during 2008). Dr. Coker's disability did not start until after age 65 (his date of disability is April 25, 2012 when he was 68 years of age); therefore, he was not totally disabled on the policy anniversary following age 60, nor was he continuously disabled from that point through age 65. Consequently, he does not qualify for and is not eligible for the Lifetime Benefit on policies D105556, D105803, D166511, D387664, D42186, and D929203.
>
> Furthermore, the Lifetime Benefit for Total Disability terminates at each policy's anniversary following the insured's 65th birthday. Although the Lifetime Benefit terminated, Dr. Coker had the right to conditionally renew each policy on the policy's anniversary following age 65. To summarize, the policies state that on each of policy anniversary between the insured's 65th and 75th birthdays that the Owner may renew each policy for one year if the insured is actively and gainfully employed on a full time basis on each anniversary date. The policies also state that the Maximum Benefit Period is 24 months on the Disability Income policies during the conditional renewal period.

31. Prior to Dr. Coker's receipt of the May 13, 2013 letter, Thompson/Northwestern never disclosed to Dr. Coker any of the alleged limitations on the lifetime benefits.

32. On numerous occasions in 2013 and 2014, Dr. Coker requested a copy of Thompson's client file concerning Dr. Coker to determine whether it might contain relevant information concerning representations made by Thompson to Dr. Coker concerning the Lifetime Policies. Northwestern refused, stating it would not provide a copy of Thompson's file without a legal obligation to do so.

33. Dr. Coker wrote Northwestern at least six times requesting accurate reproductions of the original disability policies (with the corresponding declarations pages) he purchased from

13

Northwestern. Northwestern initially refused, producing only "substitute" policies. Upon receiving the "substitute" policies, Dr. Coker requested copies of the relevant pages of the books and records of Northwestern from which the substitute policies were recreated. Northwestern refused.

34. Upon further prodding for a complete copy of the original policy, Northwestern finally produced "policy replicas" to Dr. Coker in March 2014, but only after Dr. Coker threatened to file suit if copies of the original policies were not promptly produced. One week after being warned that it would be sued if copies of the original polices were not produced, Northwestern finally responded and produced "policy replicas," which it described as duplicates of the policies originally issued along with the changes that were made. However, this representation was false as the "policy replicas" are not copies of the original policies issued to Dr. Coker. Moreover, the "substitute" policies materially differed from the "replica" policies.

35. Northwestern denies it has a copy of the original policies, and to this day, the original policies or exact duplicates of them have never been provided to Dr. Coker. However, Northwestern did keep all of Dr. Coker's original applications for disability insurance.

36. On March 21, 2014, Northwestern advised Dr. Coker that he requested that the Lifetime Accident Benefit be removed from Policy Nos. D105803 and D105556 in 1984. That is incorrect. Dr. Coker actually broadened the coverage to include a lifetime benefit for disability caused by both accident and sickness. Moreover, Thompson assured Dr. Coker numerous times that the Lifetime Policies afforded him lifetime benefits without any limitation, restriction, condition, or contingency.

37. Dr. Coker immediately disputed Northwestern's denial of his claim for lifetime benefits, explaining that he had purchased lifetime benefits and was promised by Thompson that for as

14

long as he worked as an orthopedic surgeon he was entitled to receive benefits for his lifetime if he became disabled.

38. Northwestern ceased making benefit payments to Dr. Coker on July 24, 2014 (on 8 policies) and October 22, 2014 (on the remaining 2 policies), and has terminated the benefits to be paid to Dr. Coker.

39. Thompson's representations and promises to Dr. Coker concerning the "lifetime" nature of the benefits afforded by the Lifetime Policies were also made to other of Thompson's clients. Indeed, Northwestern itself is aware of the promises that were made by Thompson concerning the "lifetime" nature of the policies because he advised Northwestern of such in writing.

40. For example, by letter dated June 20, 2006, Thompson wrote the following to Northwestern's Disability Benefits Division concerning another surgeon in the Nashville area:

> You and I both understand that his disability policies have a lifetime benefit beginning after 90 days – with several contracts which you have in the file. [The insured] emphasizes that he could not request disability coverage benefits at age 60, because he was not disabled until age 62! Yet when his disability did occur – an injury which ended his surgical capacities – he did have to stop his practice, and felt (as I did) that the lifetime benefit would still be in place. In fact, the papers we wrote up as these policies were issued emphasized (since other companies did not have that high quality lifetime benefit) that we were proud the Northwestern was still issuing this type contract. Of course, after a few years this type contract was no longer issued -- but he has the contracts dated back to that endorsement time.

> Perhaps we were too enthusiastic over the lifetime benefit provision, but my papers to him and to others owning these contracts certainly did point his benefit out for certain type applicants.

> You have stated that since he did not become disabled at 60 or earlier, the lifetime benefit is not in place. *This is the first time in my 61 years that I find such a reduced benefit on a subject I felt I fully understood. I am now wondering how many other policies*

15

> *of my doctor clientele may have a similar disillusion potential –*
> *which I may have written in the papers as we delivered these*
> *exceptional policies – now so far in the past.*

> Please see if there is any variation that would save the case for this
> disabled and retired physician client of mine.

(Emphasis added).

41. The following day, on June 21, 2006, Thompson wrote John M. Grogan, Vice-President

of Disability Income Department, and stated:

> I still recall our great pleasure in emphasizing the disability
> policies then being issued <u>did</u> provide a lifetime benefit, and that
> this benefit could be added to older contracts - - which was the
> procedure used for some of this client's policies.

> Because I did a sizeable volume of coverage for physicians during
> these years – emphasizing this particular quality – they were
> impressed and pleased because physicians have only their good
> health to hedge on the potential earnings over their practice years.

> This is the first time I have had a claim where this benefit is being
> terminated at my client's age 65, and both he and I are most
> dismayed over the result of this "new discovery."

> I realize that the lifetime benefit contract has long since been
> discontinued, and I hope the result of this ruling is not to recover
> the unexpected expenses that may have occurred in Northwestern
> claims over these past years.

42. By these letters, Thompson acknowledged and advised Northwestern that he had for

many years represented to his physician clients that Northwestern's lifetime disability policies

provided lifetime benefits without limitation, restriction, or contingency in the event the

physician ever suffered a disability which prohibited the physician from practicing his specialty.

43. Pursuant to Tenn. Code Ann. § 56-6-115(b), Thompson was an authorized agent for

Northwestern as it relates to any controversies arising from any policy issued to Dr. Coker, and

Northwestern is vicariously liable for the wrongful acts or inaction of Thompson. As a matter

16

of law, Northwestern is estopped to deny policy liability on a matter arising out of the negligence or mistake of Thompson, and if either Dr. Coker or Northwestern has to suffer from Thompson's mistake, it must be Northwestern. It was the duty of Thompson and Northwestern to exercise due diligence to supply Dr. Coker with insurance policies which would effect the intended purpose, i.e., to provide with Dr. Coker with lifetime benefits without restriction, modification, limitation, condition, or contingency in the event of disability. Damage caused by Northwestern or Thompson's mistakes or negligence rests on Northwestern, not Dr. Coker. When an insurance company or its agent delivers to the insured a policy which is known, or should be known, to be defective, such conduct is a representation that the policy is valid and effective for the purpose intended. *Allstate v. Tarrant*, 363 S.W.2d 508, 519-521 (Tenn. 2012).

44. Dr. Coker has fulfilled all duties imposed upon him by Northwestern, and has acted reasonably at all times material hereto.

45. At all times before becoming disabled and discovering that Northwestern would not honor its promise to provide lifetime benefits, Dr. Coker reasonably relied on Thompson's representations that the Lifetime Policies would provide him with lifetime benefits in the event he was disabled. At all times, based on Thompson's oral and written statements and representations to him, Dr. Coker believed that the lifetime disability benefits he was purchasing from Northwestern under the Lifetime Policies provided him with lifetime disability benefits if he became disabled from practicing his medical specialty, orthopedic surgery. He had no information to the contrary until Northwestern denied his claim for lifetime benefits.

46. Northwestern's failure to procure the appropriate insurance with lifetime benefits as promised has left Dr. Coker grossly underinsured, and has caused him substantial damage.

17

47. Northwestern's conduct, as discussed in detail above and below, falls significantly below the professional standards of service and care that Northwestern, through Thompson, had promised to provide to Dr. Coker and for which Dr. Coker, as a customer, had paid.

### III.    CAUSES OF ACTION

**Count I -- Breach of Contract**

48. The allegations contained in paragraphs 1 through 47 of this Complaint are incorporated herein by reference, as if set forth verbatim.

49. The Lifetime Policies are contracts between Dr. Coker and Northwestern, and are supported by valid consideration. The Lifetime Policies provided Dr. Coker disability insurance coverage via lifetime monthly benefits in the event Dr. Coker became disabled from practicing orthopedic surgery (even if the disability occurred after age 65).

50. Dr. Coker made a claim for lifetime benefits on the Lifetime Policies.

51. Northwestern denied Dr. Coker's claim for lifetime benefits, asserting that the Lifetime Policies do not afford Dr. Coker lifetime benefits but instead provide disability benefits for a period of only two years.

52. Northwestern is in total, material breach of the Lifetime Policies, and Northwestern is liable to Dr. Coker under the Lifetime Policies for lifetime benefits as a result of Dr. Coker's disability. Specifically, Northwestern's breach of contract includes, without limitation, its failure and refusal to pay Dr. Coker lifetime benefits as required by the Lifetime Policies.

53. Northwestern is estopped from relying on the alleged limitations, conditions, exclusions, and/or contingencies in the Lifetime Policies that it asserts are present and binding. Such estoppel is appropriate and necessary due to the actions, negligence, and representations of its agents, including but not limited to Thompson. Thompson promised and represented to Dr.

Coker that the Lifetime Policies had lifetime benefits without restriction, limitation, condition, exclusion, or contingency, and Northwestern thereby made such promise through its authorized agent. Northwestern, through its agent Thompson, intended to provide Dr. Coker with disability policies with lifetime benefits and Northwestern is estopped as a matter of law from denying Dr. Coker's claim for lifetime benefits under the Lifetime Policies.

54. As a result of Northwestern's breach of contract, Dr. Coker has sustained substantial compensable losses for the amounts claimed under the Lifetime Policies (not to exceed $13,500 per month), as well as money damages for economic losses and other numerous and assorted incidental and consequential damages. Northwestern is liable to Dr. Coker for his damages.

55. Dr. Coker also had a valid and binding contract with Northwestern for the provision and procurement of an appropriate insurance policy that would adequately and properly insure Dr. Coker against disability with lifetime benefits (without restriction, limitation, condition, exclusion, or contingency). Northwestern, through its agent Thompson, promised to issue disability insurance policies to Dr. Coker that would provide him with lifetime benefits in the event he became disabled while working as an orthopedic surgeon. Dr. Coker justifiably relied on the representations of Northwestern's representative, Thompson.

56. Northwestern agreed under this contract to provide Dr. Coker with disability insurance containing lifetime benefits at the rate of $13,500 per month (without restriction, limitation, condition, exclusion, or contingency) and to ensure professional and timely service. Dr. Coker, in turn, agreed to pay for this level of service and coverage and did in fact pay the premiums requested. Although Northwestern did in fact issue certain policies to Dr. Coker, those policies were not delivered to Dr. Coker and their terms were inconsistent with the agreement between Northwestern and Dr. Coker concerning the lifetime benefits to be provided. As a result, in

19

addition to or in full or partial alternative of Dr. Coker's breach of contract claim against Northwestern associated with the Lifetime Policies that were in fact issued or should have been issued, Dr. Coker pleads that Northwestern is in total, material breach of its contract with Dr. Coker to provide full and adequate disability insurance coverage with lifetime benefits to be paid for the remainder of Dr. Coker's life.

57. Northwestern's failure to provide the level of service contracted for (i.e., failure to appropriately and adequately insure Dr. Coker with lifetime disability benefits as requested, promised, and represented) is a material breach of the contract, and Northwestern is liable to Dr. Coker for the benefits for which Dr. Coker contracted.

58. As a result of Northwestern's breach, Dr. Coker has sustained substantial compensable losses, namely, the monthly lifetime benefits to which he is entitled, plus other numerous and assorted incidental and consequential damages which will be shown at trial.

59. Northwestern's breach of contract relative to its failure to fully pay Dr. Coker the insurance benefits to which he is entitled was intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages. *See, e.g., Riad v. Erie Ins. Exchange*, 436 S.W.3d 256 (Tenn. Ct. App. 2013). Specifically, Northwestern intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to effectuate a prompt and fair settlement of Dr. Coker's claims when liability was clear; (2) refused and failed to conduct a reasonable investigation concerning Dr. Coker's contractual right to lifetime benefits; (3) refused and failed to acknowledge Joe Thompson's promises of lifetime benefits despite the fact that Thompson had told Northwestern, in writing, about such promises to his physician clients; (4) refused to produce documentation and policies reasonably requested by Dr. Coker; and (5) unjustly refused

to pay Dr. Coker's claim for lifetime benefits. Dr. Coker seeks, and is entitled to, punitive damages.

**Count II – Breach of Contract / Failure to Procure**

60. Dr. Coker reasserts and re-alleges Paragraphs 1 through 47 of this Complaint, as if set forth verbatim.

61. Dr. Coker had a valid and binding contract with Northwestern, via Thompson, for the procurement of ten disability insurance policies that provided lifetime benefits (without restriction, limitation, condition, exclusion, or contingency) in the event he became permanently disabled from the practice of his specialty, orthopedic surgery. Northwestern, via Thompson, promised to procure such policies, and represented to Dr. Coker that the coverage requested and promised was in fact obtained and in place. In turn, Dr. Coker agreed to pay for this level of service and coverage, and did in fact pay for it. Although Northwestern did in fact issue certain disability policies, Northwestern now claims such policies do not afford Dr. Coker lifetime benefits and the policies are thus materially insufficient to compensate Dr. Coker for his losses.

62. Northwestern, via Thompson, failed to utilize reasonable care and diligence in obtaining the necessary insurance, and failed to procure insurance with the appropriate coverage. Because Northwestern failed to notify Dr. Coker of the lack of lifetime benefits (without restriction, limitation, condition, exclusion, or contingency) and because of Dr. Coker's reasonable reliance on the skills, diligence, and expertise of Northwestern as represented to him by Thompson, Dr. Coker believed he was appropriately and adequately insured at all times.

63. As a result, Dr. Coker pleads that Northwestern is in total, material breach of its contract to procure and provide Dr. Coker with full and adequate lifetime benefit disability insurance coverage.

21

64. Northwestern's failure to procure full and adequate lifetime benefit disability insurance coverage that would be effective upon Dr. Coker's disability (even if after the age of 65) is a material breach of contract, and Northwestern is liable to Dr. Coker for the shortfall, i.e., monthly benefits for life.

65. As a result of Northwestern's breach, Dr. Coker has sustained substantial compensable losses, namely, the difference between the amount of benefit payments paid to date and the amount to which Dr. Coker is entitled, i.e., monthly benefits for life (not to exceed $13,500 per month), plus other numerous and assorted incidental and consequential damages which will be shown at trial.

## Count III – Negligence and Negligent Misrepresentation/Tortious Failure to Procure

66. Dr. Coker reasserts and re-alleges Paragraphs 1 through 47 of this Complaint, as if set forth verbatim herein.

67. Northwestern is liable to Dr. Coker for negligence, negligent misrepresentation, and tortious failure to procure appropriate and adequate insurance coverage as requested and promised.

68. For more than thirty years, Northwestern, via Thompson, provided disability insurance to Dr. Coker. Throughout the course of his dealings with Dr. Coker, Thompson held himself out as a skilled insurance professional, having superior knowledge regarding his ability to procure a myriad of life and disability insurance policies for Dr. Coker. Northwestern, via Thompson, intended that Dr. Coker rely, and Dr. Coker did rely, on Thompson's alleged expertise and advice in connection with Dr. Coker's insurance-related matters.

69. Dr. Coker looked to Northwestern, via Thompson, to obtain the insurance coverage needed to provide him lifetime disability benefits in the event he became disabled while still

22

working as an orthopedic surgeon (even if the disability occurred after age 65). Thompson promised, and Dr. Coker expected, that Dr. Coker would be provided lifetime disability benefits without limitation, restriction, condition, exclusion, or contingency under Northwestern policies of insurance, all of which was false, misleading, and negligent. It was Thompson's duty to keep Dr. Coker fully informed and advised and to take such actions as might be necessary to confirm that Dr. Coker had the lifetime disability benefits that he expected and was promised. In exchange, Northwestern was paid for Thompson's services.

70. In providing the aforementioned and hereafter referenced services to Dr. Coker, Thompson and Thompson's employees/agents/authorized representatives were acting within the ordinary course and scope of their business as agents and representatives of Northwestern.

71. Dr. Coker engaged Northwestern, via Thompson, to procure and provide him with lifetime disability benefits without limitation, restriction, condition, exclusion, or contingency under Northwestern policies of insurance, and reasonably relied upon Northwestern, via Thompson, to take whatever steps might be necessary to procure the insurance coverage requested and promised.

72. Northwestern, via Thompson, failed to utilize reasonable diligence in obtaining the necessary insurance, and failed to procure the insurance promised. Because Northwestern did not notify Dr. Coker that it failed to provide the lifetime disability insurance requested and promised and because of Dr. Coker' reasonable reliance on the skills, diligence, and expertise of Northwestern's agent, Thompson, as represented to him by Thomson, Dr. Coker believed he was appropriately and adequately insured at all times.

73. Northwestern's express and implied representations to Dr. Coker justifiably warranted Dr. Coker's reliance on the representations that he was properly insured with full lifetime

23

disability benefits without limitation, restriction, condition, exclusion, or contingency under Northwestern policies of insurance. Northwestern's representations that Dr. Coker was appropriately insured as promised and requested were false, and Northwestern failed to exercise reasonable care in obtaining or communicating to Dr. Coker an accurate portrayal of the nature and extent of the insurance coverage actually provided.

74. Thompson, at all times acting as Northwestern's agent with its actual and/or apparent authority, had a duty to exercise reasonable care in ensuring that he was knowledgeable and informed as to the coverages provided by the Lifetime Policies, together with any applicable restrictions, contingencies, limitations, and/or conditions, and in ensuring that he correctly represented and advised Dr. Coker of the same. Thompson breached that duty.

75. One who holds himself out to the public as an insurance professional is required to have the degree of skill, knowledge, and diligence requisite to the calling. When engaged by a member of the public to obtain insurance, the law holds such person to the exercise of good faith and reasonable skill, care, and diligence in the execution of the commission. He is expected, and indeed required, to possess reasonable knowledge of the types of policies, their different terms, and the coverage available in the areas in which the customer needs protection. If the coverage obtained is deficient because of his failure to exercise the requisite skill or diligence, he becomes liable to the customer for the loss sustained.

76. It is the universal rule that an agent who is compensated for his services and undertakes to procure insurance for another and unjustifiably fails, will be held liable for any damage resulting.

77. The standard of care applicable to Northwestern and its agent, Thompson, required that they: (1) procure Dr. Coker disability insurance policies that contained lifetime benefits in the

24

event he was disabled while still working as an orthopedic surgeon (even if the disability occurred after age 65), with said lifetime benefits to be without limitation, restriction, condition, exclusion, or contingency under Northwestern policies of insurance; (2) to counsel and guide Dr. Coker concerning his insurance needs and the policies obtained on his behalf; (3) to act with reasonable skill, care, and diligence in securing appropriate and adequate insurance coverage for Dr. Coker as requested and promised; (4) to give reasonable information and instructions to Dr. Coker and to make such inquires as may be appropriate to ensure that Dr. Coker was adequately insured; and (5) to act as a reasonably prudent insurance professional/insurance company. Northwestern also owed Dr. Coker a duty to exercise due diligence to supply Dr. Coker a policy which would effect the purpose intended, i.e., to provide him with lifetime disability benefits without limitation, restriction, condition, exclusion, or contingency under Northwestern policies of insurance.

78. Northwestern breached the applicable standard of care, and each of the above duties.

79. Dr. Coker justifiably and reasonably relied on Northwestern's agent's representations, skill, and expertise to his detriment. Northwestern failed to provide the lifetime disability benefits requested, despite Thompson's promises and representations to the contrary.

80. Additionally, Northwestern was negligent in failing to adequately train and supervise its employees/agents, for whose actions Northwestern is vicariously liable.

81. Northwestern's negligence, negligent misrepresentations, and failure to procure adequate insurance coverage is the cause-in-fact, legal, and proximate cause of Dr. Coker's damages.

82. As a result of Northwestern's actions or failure to act as set forth above, Dr. Coker did not have the insurance coverage he was promised and has suffered and will continue to suffer substantial damages.

25

83. Northwestern is vicariously liable for the actions, inactions, and representations of its agent, Thompson, as set forth in the paragraphs above, and is liable to Dr. Coker for his damages.

**Count IV – Promissory Estoppel**

84. Dr. Coker reasserts and re-alleges Paragraphs 1 through 47 of this Complaint, as if set forth verbatim herein.

85. Northwestern, through Thompson, repeatedly made recommendations, representations, statements, and/or promises to Dr. Coker inducing him to believe that, by keeping in force and effect his Lifetime Policies, Dr. Coker would be entitled to receive lifetime benefits, without limitation, condition, restriction, or contingency in the event Dr. Coker was to become disabled and unable to work as an orthopedic surgeon (even if the disability occurred after age 65).

86. At all times when Thompson was making such recommendations, representations, statements, and promises, he was acting as Northwestern's agent with the actual and/or apparent authority to bind Northwestern.

87. Northwestern is bound by and liable for Thompson's acts, omissions, conduct, recommendations, representations, statements, and/or promises to Dr. Coker concerning his rights to receive lifetime benefits without limitation, condition, restriction, or contingency under the Lifetime Policies.

88. Northwestern knew, reasonably expected and/or should have reasonably expected that Dr. Coker would rely upon Thompson's recommendations, representations, statements and/or promises and that Thompson's recommendations, representations, statements and/or promises would induce action or forbearance on Dr. Coker's part.

26

89. Specifically, Northwestern knew, reasonably expected and/or should have expected that Dr. Coker would rely on Thompson's recommendations, representations, statements, and/or promises in first purchasing and then electing to keep in force and effect the Lifetime Policies.

90. Dr. Coker did reasonably rely upon Thompson's recommendations, representations, statements and/or promises and such did induce him first to purchase and then to keep in full force and effect the Lifetime Policies for many years.

91. For many years, Dr. Coker continued to rely upon Thompson's recommendations, representations, statements and/or promises concerning his right to receive lifetime disability benefits without limitation, restriction, condition, or contingency under the Lifetime Policies in the event he were to ever suffer a disability.

92. Dr. Coker will be unjustly damaged unless Northwestern is bound by the recommendations, representations, statements and/or promises of its agent, Thompson, and Northwestern is required to provide Dr. Coker the lifetime benefits for which he contracted and paid for many years.

93. As a direct and proximate result of Northwestern's breach of Thompson's recommendations, representations, statements and/or promises, Dr. Coker has been severely damaged, will continue to be severely damaged, and is entitled to compensation and other appropriate relief pursuant to Tennessee common law.

**Count V – Declaratory Judgment**

94. Dr. Coker reasserts and re-alleges Paragraphs 1 through 47 of this Complaint, as if set forth verbatim herein.

95. There exists a present and actual controversy between Dr. Coker and Northwestern concerning whether Dr. Coker is entitled to lifetime benefits under the Lifetime Policies.

27

96. Dr. Coker is entitled to lifetime benefits under each of the Lifetime Policies based upon the clear and consistent recommendations, representations, statements, and/or promises made to him by Thompson, who was at all times acting as Northwestern's agent and/or employee.

97. Despite the language and conditions in the Lifetime Policies (which were never provided to Dr. Coker prior to his disability and even then not exact duplicates of the original policies), Northwestern is bound by the acts, omissions, conduct, recommendations, representations, and/or promises of Thompson in his inducing Dr. Coker to purchase lifetime disability benefits without limitation, restriction, condition, or contingency from Northwestern and to keep such coverages in full force and effect for many years.

98. Based upon the clear and consistent recommendations, representations, statements and/or promises by Thompson, the limitations, restrictions, conditions or contingencies contained in the Lifetime Policies concerning Dr. Coker's right to receive lifetime disability benefits are null and void and Northwestern is estopped from relying on any such limitations, restrictions, conditions, or contingencies. To the extent any such limitations, restrictions, conditions, or contingencies were ever valid, they have been waived by Northwestern.

99. Northwestern is absolutely bound by the conduct of Thompson and is, therefore, obligated to pay Dr. Coker lifetime disability benefits under each of the Lifetime Policies.

100.     Under all the circumstances, Northwestern's contention that Dr. Coker's disability benefits have terminated is improper, wrongful, without legitimate basis, and fraudulent.

101.     Dr. Coker is entitled to a declaratory judgment that Northwestern is obligated to pay Dr. Coker lifetime benefits under the Lifetime Policies.

28

## Count VI – Reformation

102.     Dr. Coker reasserts and re-alleges Paragraphs 1 through 47 of this Complaint, as if set forth verbatim herein.

103.     Reformation of contract is an equitable remedy applicable to insurance contracts where there is a mutual mistake of the parties.   Dr. Coker invokes this Court's equitable powers and seeks reformation of the Lifetime Policies issued by Northwestern to Dr. Coker.

104.     The remedy of reformation is necessary to carry out the true intent of the parties. Dr. Coker sought, and was promised, lifetime disability benefits without limitation, restriction, condition, exclusion, or contingency under Northwestern policies of insurance, all as promised and represented to him by Northwestern's authorized agent, Thompson.   Northwestern and its agents, including but not limited to Thompson, knew that Dr. Coker desired and was promised lifetime disability benefits (even if the disability occurred after age 65) without limitation, restriction, condition, exclusion, or contingency under Northwestern policies of insurance. Accordingly, Northwestern is estopped from denying Dr. Coker the lifetime benefits to which he is entitled.   There was a meeting of the minds that Northwestern would provide Dr. Coker with lifetime disability benefits without limitation, restriction, condition, exclusion, or contingency under Northwestern policies of insurance, but the policies actually issued (at least those provided by Northwestern after Dr. Coker's liability) do not express what was really intended by the parties due to the mistake of Northwestern.   There was a mistake in the issuance, quoting, and/or drafting of the Lifetime Policies which rendered their terms different than those agreed upon by the parties.   Accordingly, the Lifetime Policies should be reformed to reflect lifetime disability benefits without limitation, restriction, condition, exclusion, or contingency, and such lifetime benefits, both past, accrued and future, should be immediately paid to Dr. Coker.

29

WHEREFORE, as a result of the foregoing, Dr. Coker would respectfully request that proper process be issued and served on the Defendant requiring it to answer or otherwise respond in the time period allotted by law, and that this Honorable Court award a judgment against the Defendant as follows:

A. For compensatory damages against Defendant not to exceed Five Million Dollars ($5,000,000.00);

B. For punitive damages in an amount to be determined and deemed appropriate by the trier of fact, but not to exceed Ten Million Dollars ($10,000,000.00);

C. For reformation of the Lifetime Policies to reflect lifetime disability benefits without limitation, restriction, condition, exclusion, or contingency, in a fashion such that Dr. Coker shall be paid benefits not to exceed $13,500.00 per month for life;

D. For a declaration that Dr. Coker is entitled to lifetime benefits under each of the Lifetime Policies;

E. For a declaration that Northwestern is estopped from denying lifetime benefits to Dr. Coker pursuant to each of the Lifetime Policies;

F. For all costs incurred as a result of this action;

G. For pre- and post-judgment interest; and

H. For such other further and general relief as this Court deems just and equitable.


## JURY DEMAND

Dr. Coker demand a jury.

30

Respectfully submitted,

GILBERT RUSSELL McWHERTER
SCOTT & BOBBITT, PLC

J. BRANDON McWHERTER #21600
CLINTON H. SCOTT #23800
*Attorneys for Dr. Coker*
341 Cool Springs Blvd., Suite 230
Franklin, TN  37067
(615) 354-1144
(731) 664-1540 Facsimile
bmcwherter@gilbertfirm.com

## COST BOND

This firm stands as surety for costs in this cause.

31

# COPY

| STATE OF TENNESSEE 20TH JUDICIAL DISTRICT CHANCERY COURT | SUMMONS | CASE FILE NUMBER 15-305-I |
|---|---|---|

| PLAINTIFF | DEFENDANT |
|---|---|
| Wesley L. Coker | The Northwestern Mutual Life Insurance Company |

TO:    (NAME AND ADDRESS OF DEFENDANT)

The Northwestern Mutual Life Insurance Company
c/o Commissioner of Insurance
500 James Robertson Parkway
Nashville, TN  37243-0565

List each defendant on a separate summons.

Method of Service:

Certified Mail
Davidson Co. Sheriff
xx *Comm. Of Insurance
*Secretary of State
*Out of County Sheriff
Private Process Server
Other
    *Attach Required Fees

**YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU.  YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW.  IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.**

| Attorney for plaintiff or plaintiff if filing Pro Se: (Name, address & telephone number) | FILED, ISSUED & ATTESTED |
|---|---|
| J. Brandon McWherter Gilbert Russell McWherter Scott & Bobbitt PLC 341 Cool Springs Blvd., Suite 230 Franklin, TN  37067 (615) 354-1144 | MAR 12 2015 |
|  | CRISTI SCOTT, Clerk and Master By:            1 Public Square Suite 308 Nashville, TN 37201 Deputy Clerk & Master |

## NOTICE OF DISPOSITION DATE

The disposition date of this case is twelve months from date of filing.  The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED |
|---|---|
|  | Sheriff |

***Submit one original plus one copy for each defendant to be served.

ADA Coordinator, Cristi Scott (862-5710)

## RETURN ON SERVICE OF SUMMONS

I hereby return this summons as follows: (Name of Party Served) _____

☐ Served _____     ☐ Not Found _____
☐ Not Served _____     ☐ Other _____

| DATE OF RETURN: | By: |
|---|---|
| | Sheriff/or other authorized person to serve process |

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20___, I sent, postage prepaid, by registered return

receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case _____ to

the defendant _____. On the _____ day of _____, 20___, I received the return

receipt, which had been signed by _____ on the _____ day of _____, 20___.

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| Sworn to and subscribed before me on this _____ day of _____, 20___. <br><br> Signature of _____ Notary Public or _____ Deputy Clerk <br><br><br> My Commission Expires: | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |
|---|---|

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S):

    Tennessee law provides a ten thousand dollar ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

    Mail list to: Clerk & Master
                 1 Public Square
                 Suite 308
                 Nashville TN 37201

Please state file number on list.

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

## CERTIFICATION (IF APPLICABLE)

| I, Cristi Scott, Clerk & Master of the Chancery Court in the State of Tennessee, Davidson County, do certify this to be a true and correct copy of the original summons issued in this case. | CRISTI SCOTT, Clerk & Master <br><br> By: <br><br><br>                         D.C. & M. |
|---|---|

**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**Jerald.E.Gilbert@tn.gov**



April 06, 2015

Northwestern Mutual Life Ins. Co.          Certified Mail
720 E. Wisconsin Ave, Rm S616, % G.C.     Return Receipt Requested
Milwaukee, WI 53202                         7012 3460 0002 8948 4891
NAIC # 67091                                Cashier # 19475

Re:    Wesley L. Coker   V.   Northwestern Mutual Life Ins. Co.

       Docket # 15-305-I

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of
Commerce and Insurance was served April 06, 2015, on your behalf in connection with the
above-styled proceeding.  Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Chancery Court Clerk
    Davidson County
    One Public Square, Suite 308
    Nashville, Tn 37201